1

2

3

4

5          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
6                  AT TACOMA

7   TOBY KEVIN ANDERSON,

8                    Petitioner,          Case No. C13-5893 RJB-KLS

9        v.                               **REPORT AND**
                                          **RECOMMENDATION**
10  PATRICK GLEBE,                        **Noted For:  April 25, 2014**

11                   Respondent.

12        Petitioner Toby Kevin Anderson seeks 28 U.S.C. § 2254 habeas relief from his 2009

13  conviction by jury verdict of first-degree robbery while armed with a firearm, first-degree

14  criminal impersonation, and second-degree prowling.  The jury returned a special verdict for the

15  use of a firearm in the robbery and with an offender score of 10, the court sentenced him to a

16  total of 210 months of confinement.  Mr. Anderson raises four grounds for relief, including

17  insufficient evidence of accomplice liability, ineffective assistance of counsel, erroneous jury

18  instruction, and failure of judge to recuse.  Dkt. 7, pp. 8, 20, 28, and 36.  Respondent argues that

19  Mr. Anderson failed to properly exhaust parts of his first claim and his third claim, and that the

20  remaining claims should be denied on the merits.

21        The undersigned recommends **DISMISSING** subparts a and b of Claim 1 and Claim 3

22  (in its entirety) for failure to properly exhaust, and **DENYING** the remainder of the habeas

23  petition on the merits as Mr. Anderson has failed to demonstrate that the state court adjudication

REPORT AND RECOMMENDATION - 1

of his claims was contrary to, or an unreasonable application of, established federal law, or was an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)–(2). The undersigned also recommends **DENYING** the issuance of a certificate of appealability.

## BACKGROUND

**A.   Facts**

Mr. Anderson was tried together with four co-defendants, Contreras, Winter, Baxter and Woods. The Washington Court of Appeals summarized the facts:

> At trial, witnesses testified as follows: On the morning of November 18, 2008, Cary Swofford awoke to see several men surrounding her trailer. One man approached her door and said he wanted to talk about his mother. She did not know him and had no idea what he was talking about. She refused to open the door because "he looked like a gangbanger." 3 Report of Proceedings (RP) at 348.

> Russell Molnar, who had been sleeping on Swofford's sofa, testified that she woke him up and was in a very excited state. He saw people running around the side of the trailer and cars parked in front. The man at the door reiterated that he wanted to come in and talk about his mother. Molnar refused to open the door. At that point, the men became "aggressive." RP (Feb. 3, 2009) at 255. Molnar said they were "ranting and raving," and two of them got into one of the cars, a Ford Explorer. 2 RP at 225.

> Molnar decided to go outside because "they didn't need to be in there." 2 RP at 245. But as he began unfastening the door locks, the man outside tried to open the door. Swofford relocked the door and told Molnar not to go outside. She was scared because of the way the men were behaving.

> Swofford and Molnar could see some of what was happening from a security camera video Swofford had installed because of problems with her neighbors. But they could not see everything due to the poor video quality, which caused activity beyond 25 feet to appear blurry. Molnar testified that he saw one of the men pull something out of the car. From the camera, it "looked like a gun, a rifle." 2 RP at 228. And "It looked like they cocked the gun and it looked like they were going to shoot at the door." 2 RP at 234. Although Swofford said she did not personally see a gun, she was frightened because she thought one of the men might have a gun based on the way he was standing. Molnar testified he was scared and called 911, but the men left before the police arrived. Swofford said

REPORT AND RECOMMENDATION - 2

they jumped into a small blue car and drove away.  After the men left, Swofford discovered they had taken the Explorer's stereo and compact disc player.

While in route to the scene, Thurston County Sheriff's Deputy Cameron Simper saw a blue Datsun, full of passengers, driving in the opposite direction. He made a u-turn, stopped the car, and noted five men crammed inside.  He identified Contreras as the driver, Woods as the front seat passenger, and Baxter, Anderson, and Winter in the back seat.  He saw a car stereo and compact disc player on the front passenger floorboard.  At that point, he did not see a gun in the car.  But when he searched the area later that morning, he found a sawed-off, 12-gauge shotgun lying in a ditch.  Deputy Simper testified that Woods told him he threw the gun out the window after someone in the back seat passed it to him and told him to get rid of it.  During trial, the court admitted the gun as State's exhibit 25.  While Molnar did not believe it was the gun he saw from the security camera, he acknowledged he had not seen the gun up close, and he was sure he saw a gun.

Thurston County Sheriff's Deputy Kyle Kempke testified that Woods appeared nervous when he recovered the gun.  Deputy Kempke drove Swofford and Molnar the scene of the roadway stop for a show-up identification.  He said they both identified Woods as the person who held the gun and they also recognized Winter and Contreras.

The State charged all five defendants with first degree robbery, attempted first degree burglary, first degree unlawful possession of a firearm, and second degree vehicle prowling.  Additionally, the State alleged that the defendants, as either principals or accomplices, were armed with a firearm while committing the robbery and burglary.  In a consolidated trial, the jury convicted all the defendants of first degree robbery and second degree vehicle prowling and returned a special verdict finding they were all armed with a firearm.  The jury also found Woods guilty of unlawful firearm possession.  The defendants appeal.

Dkt. 15, Exhibit 2, at 2-4.

**B.     State Court Procedural History**

Though counsel, Mr. Anderson appealed his conviction.  Dkt. 16, Exhibit 3.  Mr. Anderson also filed a pro-se statement of additional grounds.  *Id.,* Exhibit 5.  The Washington Court of Appeals affirmed Mr. Anderson's judgment and sentence.  *Id.,* Exhibit 2.  Mr. Anderson petitioned for review.  Dkt. 15, Exhibit 6, at 1-2.  The Washington Supreme Court denied review. *Id.*, Exhibit 7.

REPORT AND RECOMMENDATION - 3

In 2011, Mr. Anderson filed a personal restraint petition directly in the Washington Supreme Court (which was transferred to the Washington Court of Appeals).  Dkt. 16, Exhibit 8, at 2-4.  The Washington Court of Appeals dismissed the consolidated petitions of Mr. Anderson, Mr. Contreras and Mr. Winter.  *Id.*, Exhibit 11.  Mr. Anderson moved for discretionary review.  *Id.,* Exhibit 12, at 1-2.  The Washington Supreme Court denied review.  *Id.*, Exhibit 13.  Mr. Anderson moved to modify.  *Id.*, Exhibit 14.  The motion was denied.  *Id.*, Exhibit 15.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.*  A state court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).  AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  In addition, review of state court decisions under 28 U.S.C. §

REPORT AND RECOMMENDATION - 4

1   2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on

2   the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**EVIDENTIARY HEARING**

4   The decision to hold a hearing is committed to the Court's discretion. *Schriro v.*

5   *Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

6   could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

7   the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether

8   relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

9   the state court. *Cullen v. Pinholster*, ---U.S.---, 131 S.Ct. 1388 (2011). A hearing is not required

10  if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,*

11  550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or

12  otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

13  *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011). The Court finds it unnecessary to hold an

14  evidentiary hearing because Mr. Anderson's claims may be resolved on the existing state court

15  record.

**DISCUSSION**

17  **A.    Exhaustion of State Remedies**

18  Respondent concedes that Mr. Anderson fairly presented and exhausted subpart c of

19  Claim 1, Claim 2, and Claim 4. Dkt. 15, p. 10. Respondent argues however, that Mr. Anderson

20  failed to exhaust subparts a and b of Claim 1 and Claim 3 in its entirety because he failed to

21  properly raise the claims at every level of the state courts' review. The Court agrees that

22  subparts a and b of Claim 1 and Claim 3 are not properly exhausted.

23

To present a claim to a federal court for review in a habeas corpus petition, a petitioner must first have presented that claim to the state court.  See 28 U.S.C. § 2254(b)(1).  Claims for relief that have not been exhausted in state court are not cognizable in a federal habeas corpus petition.  *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).  A petitioner must properly raise a habeas claim at every level of the state courts' review.  *See Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).

"Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."  *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  Consequently, presentation of a federal claim for the first time to a state's highest court on discretionary review does not satisfy the exhaustion requirement.  *Castille*, 489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004).  But see *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available").

"Fair presentation" requires that the prisoner alert the state courts to the fact that he is asserting claims under the United States Constitution.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995).  The prisoner must specifically characterize his claims as federal claims, either by referencing specific constitutional provisions or by citing to relevant federal case law.  *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000), *opinion amended*, 247 F.3d 904 (9th Cir. 2001).

REPORT AND RECOMMENDATION - 6

The prisoner also "must describe in the state court proceedings both the operative facts and the federal legal theory on which his claim is based." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). General appeals to broad constitutional principles such as due process, equal protection, or the right to a fair trial are not sufficient (*Hiivala v. Wood*, 195 F. 3d 1098, 1106 (9th Cir. 1999)), nor is it enough to raise a state claim that is analogous or similar to a federal claim. *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996).

Although Mr. Anderson invoked "one complete round" of state court review in his case, Mr. Anderson failed to present subparts a and b of Claim 1 on a federal constitutional basis in either the Washington Court of Appeals or the Washington Supreme Court.  Mr. Anderson previously raised the claim that there was insufficient evidence to prove that he had acted as an accomplice to the crime of Robbery in the First Degree.  *See* Dkt. 16, Exhibit 3, pp. 20-24, and Exhibit 6, p. 17-20.  However, he did not present the claim as set forth in subpart a (that the prosecutor knowingly used perjured testimony that there were five people participating in the crime).  In his federal petition he argues that the prosecutor did this although he knew that the victims had counted ten and that the victims were only speculating as to the correct number of individuals who participated in the crime.   He also did not present a claim in the same manner as he does here in subpart b of Claim 1.  Here, he argues that at least one person (participating in the crime) "just stood there," thus raising reasonable speculation only and not sufficient evidence that he may have acted as an accomplice to the crime.

With regard to Claim 3, Mr. Anderson presented this claim as a federal constitutional violation in his petition for review only.  Dkt. 16, Exhibit 6, at 13 and 15.  He presented the claim solely as a state law issue before the Washington Court of Appeals and did not present it in his pro se statement of additional grounds for review.  Dkt. 16, Exhibit 3, at 13-20; Exhibit 5.

Therefore, he failed to properly exhaust the claim for federal habeas corpus review purposes because he did not present it as a federal constitutional violation at every level of state court review.

**B.      Procedural Bar**

Because of the state statute of limitations and the state rule prohibiting successive petitions, Mr. Anderson's unexhausted claims are procedurally barred in state court under RCW 10.73.090, RCW 10.73.140 and RAP 16.4(d).  Under Washington law, a defendant may not collaterally challenge a conviction more than one year after the conviction becomes final.  RCW 10.73.090(1).  Mr. Anderson's conviction became final for purposes of state law on November 2, 2010.  Dkt. 16, Exh. 7.  Because more than one year has passed since his conviction became final, the claims are now time-barred in state court.

Washington law also prohibits the filing of successive collateral challenges.  RCW 10.73.140; RAP 16.4(d).   Mr. Anderson previously filed a personal restraint petition and is, therefore barred from filing another collateral challenge absent a showing of good cause. Because his claims are procedurally barred under Washington law, the claims are not cognizable in a federal habeas corpus petition absent a showing of cause and prejudice or actual innocence.

**C.      Cause and Prejudice**

Unless it would result in a "fundamental miscarriage of justice," a petitioner who procedurally defaults may receive review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. *Coleman v. Thompson*, 501 U.S. at 750.  The petitioner must show an objective factor actually caused the failure to properly exhaust a claim. *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995).  "The fact that [a petitioner] did not present an available claim or that he chose to pursue other claims does

REPORT AND RECOMMENDATION - 8

1    not establish cause." *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

2           A petitioner can demonstrate "cause" by showing interference by state officials, the

3    unavailability of the legal or factual basis for a claim, or constitutionally ineffective assistance of

4    counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner cannot demonstrate cause to

5    excuse a procedural default where the cause is fairly attributable to the petitioner's own conduct.

6    *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992).  Petitioner's inadequacies and lack of

7    expertise in the legal system do not excuse a procedural default.  *Hughes v. Idaho State Bd. of*

8    *Corrections*, 800 F.2d 905, 907-09 (9th Cir. 1986).  "An evidentiary hearing is not necessary to

9    allow a petitioner to show cause and prejudice if the court determines as a matter of law that he

10   cannot satisfy the standard." *Clark v. Lewis*, 1 F.3d 814, 820 (9th Cir. 1993).

11          "[I]n an extraordinary case, where a constitutional violation has probably resulted in the

12   conviction of one who is actually innocent, a federal habeas court may grant the writ even in the

13   absence of a showing of cause for the procedural default." *Wood v. Hall*, 130 F.3d 373, 379 (9th

14   Cir. 1997) (quoting *Murray v. Carrier*, 477 U.S. at 496).  "To meet this manifest injustice

15   exception, [the petitioner] must demonstrate more than that 'a reasonable doubt exists in the light

16   of the new evidence.'" *Wood*, 130 F.3d at 379 (quoting *Schlup v. Delo*, 513 U.S. 298, 329

17   (1995)).  The petitioner must also "make a stronger showing than that needed to establish

18   prejudice." *Schlup*, 513 U.S. at 327.  "[T]he petitioner must show that it is more likely than not

19   that no reasonable juror would have convicted him in the light of the new evidence."  *Id.*  "'[T]he

20   miscarriage of justice exception is concerned with actual as compared to legal innocence.'"

21   *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

22          Mr. Anderson cannot demonstrate cause and prejudice or a fundamental miscarriage of

23   justice.  He cannot show cause, i.e., an objective external factor outside his control that excused

REPORT AND RECOMMENDATION - 9

his procedural default.  He also does not show prejudice, i.e., that an error of constitutional proportions infected his whole trial.  Mr. Anderson also did not produce any evidence of actual innocence that would excuse his procedural default.  Since he cannot excuse his procedural default, these claims are not cognizable in the habeas corpus proceeding and therefore, subparts a and b of Claim 1 and Claim 3 in its entirety should be dismissed.

**B.     Claim 1 (Subpart c) – Insufficient Evidence of Accomplice to Robbery**

In Claim 1 (subpart c), Mr. Anderson argues that even if the evidence was sufficient to establish that he was an accomplice to a crime, "it was to theft and not robbery because there was no evidence that [he], or any other defendant, knew that Woods would elevate the crime of theft to the crime of robbery by using force, e.g. the gun."  He also argues, as he did before the state courts that the Washington Court of Appeals' recitation of facts was inaccurate and when the facts are compiled in proper order, it shows that the State failed to prove the elements of first degree robbery.  Both of these claims were rejected by the Washington appellate courts.

When evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the Court itself believes the evidence establishes guilt.  "Instead, the relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *Wright v. West*, 505 U.S. 277, 284 (1992).  The Court must "view the record as a whole in the light most favorable to the prosecution."  *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.), *cert. denied*, 489 U.S. 1077 (1990).  The constitutional sufficiency of evidence review is sharply limited.  *Wright*, 505 U.S. at 296.  The jury is entitled to believe the State's evidence and disbelieve the defense's evidence.  *Id*.

Washington's test for determining the sufficiency of evidence is identical to that set forth by the Supreme Court in *Jackson*.   In Washington, evidence is sufficient if after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found guilt beyond a reasonable doubt.  *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980).  When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.  *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977).

In reviewing this issue on direct appeal, Division I of the Washington Court of Appeals held:

> Anderson raises several additional arguments in a pro se statement of additional grounds.  He contends there is insufficient evidence to support his robbery conviction because the jury acquitted him of attempted burglary.  But burglary involves unlawfully entering or remaining in a building, which is not an element of robbery.  RCW 9A.51.020; RCW 9A.56.200(2).  Here, a rational jury could have found the elements of robbery without finding that the defendants attempted to enter Swofford's trailer.  He also argues that the victims "did not view a theft, they viewed the entering of a vehicle."  Statement of Additional Grounds at 16.  But the jury could infer that the defendants entered the vehicle to take Swofford's property, especially considering that they found the car's stereo missing soon after the defendants left.  And he contends there was no use of force or threatened use of force because the "defendant's did not cuss, threaten, or even raise their voice."  Statement of Additional Grounds at 17.  But Molnar testified that he saw a gun, and Swofford testified that she was scared because of the way the defendants were behaving.  We reject Anderson's insufficiency arguments.

Dkt. 16, Exhibit 2, pp. 22-23.

In reviewing Mr. Anderson's insufficiency of evidence claim in his personal restraint petition, Division II of the Washington Court of Appeals held:

> Anderson first argues that Division One's statement of the facts in his direct appeal contains many inaccuracies and when the facts are compiled in proper order, it shows that the State failed to prove the elements of first degree robbery.  He argues that a correct recitation of the facts would show that Swofford and Molnar observed the defendants enter the Ford Explorer from a video monitor and thus were not present during this taking.  He concludes that (1) the defendants

REPORT AND RECOMMENDATION - 11

did not know they were being observed when they stole the equipment from the car, (2) the victims were not present during the taking, and (3) the theft preceded the gun being produced and therefore it was not committed while armed with a deadly weapon.

Petitioner challenged the sufficiency of the evidence in his direct appeal and must demonstrate that redetermining the grounds asserted on appeal would serve the ends of justice. *In re Pers. Restraint of Gentry,* 137 Wn.2d 379, 388, 972 P.2d 1250 (1999). He fails to do so. First, an appellate court reviewing a claim of insufficient evidence reviews all the evidence in a light most favorable to the prosecution. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). While an appellate court must summarize the facts in writing an opinion, it neither lists all the facts nor limits its analysis to only those facts in that summary. In other words, Division One considered all the evidence before it when it determined that sufficient evidence supported all elements of first degree robbery. Nothing Anderson shows compels this court to reconsider the issues Division One has already decided. Further, as noted above in *section I, A.,* sufficient evidence shows presence, force, and use of a weapon.

Dkt. 16, Exhibit 11, pp. 6-7 (emphasis added).

Section I, A referred to by Division II can be found in that portion of its opinion dealing

with Brian Winter's claim that the State had failed to prove first degree robbery:

Winter first claims that the State failed to prove first degree robbery because the State did not prove that (1) the property was taken from a person, (2) by use of force or fear, and that (3) force or fear was used to retain the property or to overcome resistance. Taking the evidence in a light most favorable to the State, ample evidence supported the robbery convictions. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (appellate court considers the evidence in light most favorable to State); *State v. Camarillo,* 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (court defers to jury on issues of credibility, conflicting testimony, and persuasiveness of the evidence).

On the morning of November 18, 2008, Cary Swofford awoke to see several men surrounding her trailer. One man approached her door and said he wanted to talk about his mother. She did not know him and had no idea what he was talking about. She refused to open the door because "he looked like a gangbanger." 3 Report of Proceedings (RP) at 348.

Russell Molnar, who had been sleeping on Swofford's sofa, testified that she woke him up and was in a very excited state. He saw people running around the side of the trailer and cars parked in front. The man at the door reiterated that he wanted to come in

REPORT AND RECOMMENDATION - 12

and talk about his mother.  Molnar refused to open the door.  At that point, the men became "aggressive."   RP (Feb. 3, 2009) at 255.  Molnar said they were "ranting and raving," and two of them got into one of the cars, a Ford Explorer.  2 RP at 225.

Molnar decided to go outside because "they didn't need to be in there."  2 RP at 245.  But as he began unfastening the door locks, the man outside tried to open the door.  Swofford relocked the door and told Molnar not to go outside.  She was scared because of the way the men were behaving.

Swofford and Molnar could see some of what was happening from a security camera video Swofford had installed because of problems with her neighbors.  But they could not see everything due to the poor video quality, which caused activity beyond 25 feet to appear blurry.  Molnar testified that he saw one of the men pull something out of the car.  From the camera, it "looked like a gun, a rifle."  2 RP at 228.  And "It looked like they cocked the gun and it looked like they were going to shoot at the door."  2 RP at 234.  Although Swofford said she did not personally see a gun, she was frightened because she thought one of the men might have a gun based on the way he was standing.  Molnar testified he was scared and called 911, but the men left before the police arrived.  Swofford said they jumped into a small blue car and drove away.  After the men left, Swofford discovered they had taken the Explorer's stereo and compact disc player.

*State v. Winter,* noted at 156 Wn. App. 1013, at 2-3, *review denied,* 170 Wn.2d 1003 (2010).

Undisputedly, the swarm of men took Swofford's property from her vehicle.  The ranting and raving from the crowd, the presence of a firearm, and the man trying to gain entry to the home placed Swofford and Molnar in reasonable fear of violence or injury that allowed the men to take or retain the equipment and prevented Swofford and Molnar from knowing that the men were stealing property from them.  *See State v. Stearns,* 61 Wn. App. 224, 229, 810 P.2d 41 (1991) (taking of personal property can occur even if victim is not immediately present).  This was sufficient to prove the elements of first degree robbery.

Dkt. 16, Exhibit 11, at 2-3.

The Washington Court of Appeals made factual findings from its review of the state court record that Mr. Anderson cannot rebut by clear and convincing evidence.  See 28 U.S.C.

REPORT AND RECOMMENDATION - 13

2254(e)(1) stating that factual findings made by state courts are presumed to be correct and the burden is on the habeas petitioner to rebut this presumption by clear and convincing evidence. The state court reviewed the evidence at trial including Molnar's testimony he saw one of the defendants pull something out of the car that looked like a gun, a rifle.  Molnar also saw the man cock the gun and point it at the door prompting Molnar not to leave the trailer because he was scared.  The court also noted the testimony of Molnar and Swofford that the defendants were running around the trailer and cars, one of them brandished a gun, two of them broke into one of the cars, and they all left in a small blue car.   There was also testimony by Molnar that the defendants became aggressive and started ranting and raving when denied entry to the trailer and that one of the men cocked the gun as though he was going to shoot at the door.  Dkt. 16, Exhibit 2.

The Washington appellate courts concluded that when the facts were viewed in the light most favorable to the state, there was sufficient evidence from which the jury could find the defendants agreed to aid in taking Swofford's property and that they did so knowing that the taking would be accomplished by the use of force or threatened use of force.  As noted by the court of appeals, the jury instruction properly required not only intent to commit theft but also the threatened use of force.  Thus, the court concluded that the first-degree robbery "to convict" instruction correctly informed the jury it had to find Mr. Anderson would have knowingly promoted or facilitated robbery by aiding or agreeing to aid in its commission.  *Id*. at 14.

Mr. Anderson has failed to show that the state appellate courts' adjudication of this claim was contrary, to or an unreasonable application of clearly established federal law and the undersigned recommends that federal habeas relief on this claim be denied.

REPORT AND RECOMMENDATION - 14

**C.      Claim 2 – Ineffective Assistance of Counsel**

In this claim, Mr. Anderson argues his counsel was ineffective because he failed to object to the admission of the victim's testimony regarding images produced by the malfunctioning camera and monitor.  Dkt. 7, at 20-28.

To support a claim of ineffective assistance of counsel, a petitioner must satisfy a two-part standard.  First, the petitioner must show that counsel's performance was so deficient that it "fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  Second, the petitioner must show that the deficient performance prejudiced the defense so "as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  To prove prejudice, petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."  *Woodford v. Visciotti*, 537 U.S. 19, 22 (2002) (per curiam) (emphasis in the original).  "Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 668- 69.  Because the petitioner must satisfy both prongs of *Strickland*, a court need not address both prongs if the petitioner makes an insufficient showing of one prong.  *Id*. at 697.  A federal court "must indulge a presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  *Id*.  This presumption of competence includes a presumption that challenged actions were the result of reasonable trial strategy.  *Id*. at 689-90; *see also Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

The Washington Supreme Court rejected Mr. Anderson's claim.  In doing so, it applied Washington's standard of ineffective assistance set forth in *State v. McFarland*, 127 Wn.2d 322, 344-35 (1995), which is based on *Strickland*:

> Mr. Anderson finally argues that defense counsel was ineffective in failing to object to Ms. Swofford's and Mr. Molnar's testimony as to what they observed

REPORT AND RECOMMENDATION - 15

on the security video monitor.  Mr. Anderson must demonstrate both deficient performance and resulting prejudice.  *State v. McFarland,* 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).  Mr. Anderson fails to show that what a witness sees with his or her own eyes, even if it is an image conveyed by a video monitor, is not admissible evidence if it is relevant.  ER 402.  Because counsel had no tenable basis for objecting to the admissibility of the testimony, the only reasonable strategy was to attack the veracity of the testimony by highlighting the poor quality of the video image.  *See State v. Hendrickson,* 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996) (matters of trial strategy or tactics will not support ineffectiveness claim).  Mr. Anderson does not show ineffective assistance.

Dkt. 16, Exhibit 13, p. 5.

The Washington Supreme Court concluded that the only reasonable strategy left to Mr. Anderson's counsel was to attack the veracity of the testimony by highlighting the poor quality of the video image because counsel had no tenable basis under Washington Evidentiary Rule (ER) 402 to object to the admissibility of the testimony.  Mr. Anderson fails to show that the state appellate court's adjudication of his ineffective assistance claim was contrary to or an unreasonable application of clearly established federal law.  Therefore, the undersigned recommends that habeas relief on this claim be denied.

## D.    Claim 4 – Recusal of Trial Judge

In his fourth claim, Mr. Anderson contends that his right to a fair trial was violated when the judge failed to recuse himself in a case where he allegedly had a conflict of interest.  Dkt. 7, at 36-42.  The Washington Appellate Court rejected this claim when it was raised by Mr. Anderson and his co-defendant, Rigoberto Contreras:

Contreras claims that the trial court had a conflict of interest and should have recused himself from the trial.  Specifically, he asserts that Judge Hicks personally knew Cary Swofford and that his nephew, Dave Hicks, was Swofford's significant other.  As further proof, he claims that Judge Hicks recused himself in two cases in which Swofford was the defendant.

But petitioner fails to show with any competent evidence that his claims are true.  First, he relies on multiple hearsay statements.  *See* Petitioner (Ex. A—C).  Second, the clerk's minutes showing that Judge Casey substituted for Judge

REPORT AND RECOMMENDATION - 16

1      Hicks do not show that he recused himself.  *See*  Petition (Ex. E—F).  Finally, the
State has obtained a declaration from Judge Hicks in which he avows that he does

2      not know Swofford, that his cousin had a son named Dave Hicks but that he does
not know him, and that he does not recall ever recusing himself from Swofford's

3      cases.  *See* Response (App. D).  RAP 16.7(a)(2)(i); *In re Pers. Restraint of
Williams,* 111 Wn.2d 353, 365, 750 P.2d 436 (1988) (petitioner must present

4      evidence showing that his factual allegations are based on more than speculation
and conjecture).  *In re Pers. Restraint of Rice,* 118 Wn.2d 876, 886, 828 P.2d

5      1086, *cert. denied,* 506 U.S. 958 (1992) (same.)  Petitioner's claim fails.
…

6      Anderson claims that the trial court judge had a conflict of interest and
should have recued himself from the trial.  He relies on the same evidence as

7      Contreras and for the reason in section II, A., above.  This claim fails.

8  Dkt. 16, Exhibit 11, pp. 5 and 9.

9      The Washington Supreme Court similarly dismissed this claim:

10      Mr. Contreras and Mr. Anderson next contend that the trial court violated
their right to a fair trial and the appearance of fairness because the trial judge had

11      a conflict of interest.  Specifically, they assert that the judge is related to Ms.
Swofford's boyfriend, David Hicks, and to Troy Sparger, the owner of Ms.

12      Swofford's trailer.  Mr. Contreras and Mr. Anderson contend that the judge had
previously recused from court cases involving Ms. Swofford.

13

14      The trial judge asserts by declaration that he does not know Ms. Swofford.
He states that his cousin has a son named David Hicks, and that he may have

15      recused on a matter involving Mr. Hicks after the family relationship was
explained.  The judge further states that Mr. Sparger may be the son of another

16      cousin.  He asserts that he would not recognize Mr. Sparger or Mr. Hicks if he
met them on the street.  He did not recall recusing from any matter involving Ms.

17      Swofford, but he states that he might have done so if it had been explained that
she was in a relationship with Mr. Hicks.

18      Mr. Contreras and Mr. Anderson show at most that another judge may
have substituted for the trial judge on some previous matters relating to Ms.

19      Swofford, but they do not show actual recusal.  The alleged statement by Ms.
Swofford that the trial judge had recused in her cases is hearsay by an

20      investigator.  Mr. Contreras and Mr. Anderson fail to provide sufficient
admissible evidence to justify a reference hearing.  *In re Pers. Restraint of Rice,*

21      118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

22  Dkt. 16, Exhibit 13, pp. 4-5.

23      In his motion to modify before the Washington Supreme Court, Mr. Anderson presented

REPORT AND RECOMMENDATION - 17

1    for the first time as exhibits, two court dockets reflecting that Judge Hicks had recused himself

2    on June 6, 2005 in two cases where Cary Lea Swofford was a defendant (Case Nos. 95-1-01667-

3    1 and 00-1-00208-8).  Respondent argues that this Court should not consider the exhibits because

4    they were not presented on direct review or in a personal restraint petition, but were presented

5    for the first and only time to the Washington Supreme Court in a motion to modify – in a

6    procedural posture in which the exhibits could not have been considered.  Washington Rule of

7    Appellate Procedure (RAP) 12.4(c) limits a motion to modify to points of law or facts the

8    reviewing court has overlooked or misapprehended.  Mr. Anderson could not add new factual

9    evidence in his motion to modify because as a general rule, Washington courts "will not consider

10    issues and arguments raised for the first time in a motion for reconsideration."  *Housing Auth. v.*

11    *Northeast Lake Wash. Sewer & Water Dist.*, 56 Wn.App. 589, 595 n.5, 784 P.2d 1284, *review*

12    *denied*, 115 Wn.2d 1004, 795 P.2d 1156 (1990).

13           To the extent Mr. Anderson claims the judge violated state law by failing to recuse

14    himself, he is not entitled to habeas relief on any such claim.  Federal habeas relief is available

15    only for violations of the Constitution, treaties or laws of the United States.  See 28 U.S.C. §

16    2254(a); *Wilson v. Corcoran*, ─── U.S. ────, ────, 131 S.Ct. 13, 16 (2010) ("it is only

17    noncompliance with federal law that renders a State's criminal judgment susceptible to collateral

18    attack in the federal courts") (original emphasis); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)

19    (mere errors in the application of state law are not cognizable on federal habeas review).

20           However, the Due Process Clause requires a "fair trial in a fair tribunal" before a judge

21    with no actual bias against the defendant.  *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997);

22    *Smith v. Mahoney*, 611 F.3d 978, 997 (9th Cir.), *cert. denied*, ─── U.S. ────, 131 S.Ct. 461

23    (2010).  Where judicial bias is claimed, habeas relief is limited to circumstances in which the

state trial judge's behavior rendered the trial so fundamentally unfair as to violate due process. *See Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir.1995), *cert. denied*, 517 U.S. 1158 (1996).  To succeed on a judicial bias claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators."  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir.), *cert. denied*, 555 U.S. 871 (2008).

In denying this claim, the Washington Supreme Court made factual findings in reliance on the affidavits provided by the State.  These findings are presumed to be correct and Mr. Anderson fails to rebut AEDPA's correctness presumption by clear and convincing evidence. ECF No. 7, at 36-42; *see also* 28 U.S.C. 2254(e)(1).  Specifically, the Washington Supreme Court relied on the trial judge's declaration he did not know Ms. Swofford and that he may have recused in a matter involving David Hicks (the son of his cousin) after the relationship was explained.  Dkt. 16, Exhibit 13, at 4; see also, Exhibit 9, Appendix G (declaration of the Hon. Richard D. Hicks).  The Washington Supreme Court also relied on the judge's statements in his declaration that Mr. Spargur may be the son of the judge's other cousin, but the judge would not be able to recognize either Mr. Hicks or Mr. Spargur if he met them on the street, and that he did not recall recusing from any matter involving Ms. Swofford but would have done so it if it was explained she was in a relationship with Mr. Hicks.  *Id.*, Exhibit 13, at 4.

The Washington Supreme Court also determined that the statement in Ms. Swofford's declaration that Judge Hicks recused in her cases was hearsay by the investigator.  *Id.*  The court dockets presented by Mr. Anderson in his motion to modify support Ms. Swofford's statement that Judge Hicks did in fact recuse himself in two of her criminal cases in 2006.  The reasons for the recusal are not known and as pointed out by Respondent, the court dockets were not part of the record when the Washington Supreme Court denied relief.

REPORT AND RECOMMENDATION - 19

More importantly, and regardless of whether the prior recusals are considered, it is this Court's task to determine whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution.  In this regard, Mr. Anderson has not shown that Judge Hicks harbored any "deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  There are no allegations that any of the judge's familial relations caused the judge to do anything that rendered Mr. Anderson's trial fundamentally unfair, and the record is wholly devoid of any evidence of judicial bias.  *See id*. at 550–51 (even a judge who is "exceedingly ill disposed towards the defendant" not subject to recusal on the ground of bias).

Mr. Anderson includes within Claim 4, a paragraph in which he contends that Judge Hicks allowed the prosecutor to badger the victim, Russell Molnar, into testifying that the "something" which he saw defendant pull out of the defendants' car was a gun, that he allowed the prosecutor to yell at the victim multiple times to "SHUT THE HELL UP!" when the victim would not allow the prosecutor to insert the word "gun" into the question in place of the victim's word "something," and then had the stenographer delete the entire incident from the record.  Dkt. 6, p. 28.   Respondent characterizes this contention as a separate subpart that the state courts failed to address and concludes that this Court should address it *de novo*.  Dkt. 15, p. 28.  The Court declines to do so as the contention has clearly been included in Mr. Anderson's federal habeas petition in support of his claim that he was prejudiced by Judge Hicks' failure to recuse himself because of his relation to the victim.  The only time this contention was raised as a separate and distinct claim was when Mr. Anderson included it in his pro-se statement of additional grounds in his direct appeal before the Washington Court of Appeals.  The claim was rejected:

1           Finally, Anderson claims the prosecutor engaged in misconduct by telling
2    a witness to "shut the hell up" and that the trial court deleted this statement from
     the record to prevent our review.  But he offers nothing other than his own
3    assertions to support this claim, so it also fails.  See State v. Miller, 40 Wn. App.
     483, 488, 698 P.2d 1123 (1985).

4    Dkt. 10, Exhibit 2, p. 24.

5           There is nothing in Mr. Anderson's statement of additional grounds to alert the state court

6    to the fact that he was asserting this claim under the United States Constitution either by

7    characterizing his claim as a federal claim or by referencing specific constitutional provisions or

8    relevant federal case law.  See, *Duncan*, 513 U.S. at 365.  Further, the contention does not appear

9    again as a separate ground on appeal.  Instead, Mr. Anderson included the contention in his

10   personal restraint petition and petition for review before the Washington Court of Appeals and

11   Washington Supreme Court – as he does here – as evidence of Judge Hick's alleged impartiality

12   in allowing the prosecutor to "badger" a witness into saying that he saw a gun.  *See* Dkt. 10,

13   Exhibits 8, p. 45; Exhibit 12, p. 14.  However, the trial transcripts show that Molnar repeatedly

14   testified that he saw a gun even in response to questions posed by Mr. Anderson's counsel.  Dkt.

15   16, Exhibit 16, Vol. II, February 3, 2009, at 228, 229, 234, 245, 247, 275-76, 294.  And, in his

16   closing speech, Mr. Anderson's attorney acknowledged that the evidence was consistent that

17   "there was one person outside the residence last year, one person had this firearm, if it was a rifle

18   or a shotgun.  Only one person had this weapon the whole time."  *Id.*, Vol. IV, February 5, 2009,

19   at 520.

20          On reviewing the record, this Court has discerned no judicial conduct rendering Mr.

21   Anderson's trial "so fundamentally unfair as to violate federal due process ..."  *See Duckett v.*

22   *Godinez*, 67 F.3d at 740.  Accordingly, the state courts' rejection of this claim was not contrary

23   to, or an objectively unreasonable application of, any clearly established federal law as

REPORT AND RECOMMENDATION - 21

determined by the United States Supreme Court. See 28 U.S.C. § 2254(d); *Harrington v. Richter*, 131 S.Ct. at 785–87.   Mr. Anderson is not entitled to federal habeas relief on this claim and it should be denied.

**E.     Certificate of Appealability**

If the district court adopts the Report and Recommendation, it must determine whether a certificate of appealability ("COA") should issue.  Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court recommends that Mr. Anderson not be issued a COA.  No jurist of reason could disagree with this Court's evaluation of his habeas claims or would conclude that the issues presented deserve encouragement to proceed further.  Mr. Anderson should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

**CONCLUSION**

The Court recommends **DISMISSING** Subparts a and b of Claim 1 and Claim 3 (in its entirety) for failure to properly exhaust, and **DENYING** Subpart b of Claim 1, Claim 2, and Claim 4 on the merits without an evidentiary hearing.  The Court also recommends **DENYING** the issuance of a certificate of appealability.

REPORT AND RECOMMENDATION - 22

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).   Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 25, 2014**, as noted in the caption.

DATED this   9th   day of April, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23